**Robert Willard SPECK and Lorna Marie Speck, Plaintiffs/Appellants,**

**v.**

**UNITED STATES of America, Acting Through the FARMERS HOME ADMINISTRATION, Defendant/Appellee.**

Civ. No. 89–3020.

United States District Court, D. South Dakota.

Sept. 21, 1989.

James E. Carlon, Carlon Law Offices, Pierre, S.D., for plaintiff.

Thomas Lloyd, Asst. U.S. Atty., Pierre, S.D., for defendant/appellant.

John S. Lovald, Pierre, S.D., for trustee.

Douglas E. Kludt, Huron, S.D., interested party.

## MEMORANDUM OPINION

DONALD J. PORTER, Chief Judge.

This Chapter 12 case comes before this Court on appeal from an 11 U.S.C. § 506(a) valuation placed on certain agricultural land by the Bankruptcy Court. The Bankruptcy Court, after conducting a 506(a) hearing with expert testimony, determined that the debtors' farm includes 301 acres of Class II cropland with a fair market value of $200 per acre. The substance of this appeal concerns a 107 acre portion in the Northwest Quarter of the debtors' farm which the Bankruptcy Court included in the 301 acres of Class II cropland. The debtors' Chapter 12 plan proposes to use the 107 acres in dispute as pasture.

## FACTS

The debtors, Robert and Lorna Speck, own a farm in Hand County consisting of 388 acres. On March 26, 1987, the debtors filed a Chapter 12 bankruptcy petition. One of the debtors' creditors, Farmers Home Administration (FmHA), sought to have its real estate security valued and its secured claim determined. FmHA filed a motion for such a determination under 11 U.S.C. § 506(a). The debtors' reorganization plan was confirmed on September 30, 1987, with the secured amount of FmHA's $142,772.97 claim to be decided later.

The Bankruptcy Court held a valuation hearing on November 7, 1988. The hearing hinged largely upon the value to be placed upon 107 acres of property which the debtors had attempted to break up and farm since 1983, but which they now proposed to use as pasture. Debtor, Robert Speck, testified at the hearing that he had originally farmed that acreage to "get rid of all the gophers and weeds" and that he had intended to make the ground more suitable for pasture. Debtors' appraiser also testified that despite the Class II classification, meandering creeks and shallow waterways permeated the 107 acre tract so as to make it best suited for pasture at a value of $100 per acre. Speck and his appraiser both testified that the buildings on the property would contribute nothing to the value of the farm unit. Debtors asserted that the fair market value of the 388 acre farm should be established at $38,800.

FmHA's appraiser testified that the tract was tillable and could be used most profitably as cropland at a value of $225 per acre. This appraiser also assigned a nominal value of $4,000 to the buildings on the property. Finally, a soils scientist for ASCS testified that the soil maps for the 107 acres in question failed to identify any management limitations such as wetness or stones which would impede its use as cropland.

The Bankruptcy Court found the testimony of the soils scientist to be most helpful and concluded that the 107 acre portion of the Northwest Quarter should be valued as cropland. Thus, the entire farm unit consisted of 301 acres of cropland. The Court, cognizant of several discrepancies in the comparable sales used by FmHA's appraiser, did decrease the value of cropland from $225 to $200. The Bankruptcy Court established a value for the farm of $71,150 which included a contributory value of $4,000 for the buildings.

## DISCUSSION

Any inquiry into the Bankruptcy Court's valuation determination must be prefaced by a recitation of the standard which guides this review. Because the 506(a) hearing is primarily a factual determination, the bankruptcy judge's findings of fact will be overturned only if the District Court is left with the strong conviction that they are clearly erroneous. *In re Erickson Partnership*, 83 B.R. 725 (D.S.D.1988). This Court is not left with such a conviction.

The bankruptcy courts are provided very little statutory guidance when making the 506(a) valuation. 11 U.S.C. § 506(a) provides only that:

> ... value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

This vague standard is aided little by the legislative history of the statute. Congress established no rigid formula for fixing the value of collateral, saying that value will have to be determined on a "case-by-case basis, taking into account the facts of each case and the competing interests in the case." H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 356 (1977), reprinted in 5 U.S.Code Cong. & Admin. News at 6312 (1978). *See also Barash v. Public Finance Corp.*, 658 F.2d 504, 512 (7th Cir.1981) and *In re Frost*, 47 B.R. 961 (D.Kan.1985). It follows that the bankruptcy judge's factual findings are not to be treated lightly by the reviewing court.

Debtors argue that the Bankruptcy Court erred in valuing the 107 acre portion as cropland. Relying on *In re Foster*, 79 B.R. 906 (Bankr.Mont.1987), debtors assert that because they proposed to use that acreage as pasture in their reorganization, § 506(a) demands that this proposed use form the basis for the Bankruptcy Court's valuation. This Court finds no merit to this argument. *Foster* concerned a valuation dispute over farmland situated on the edge of an expanding city. The debtors proposed to continue using the property in their farming operation. The creditors' appraiser, however, offered to show that by subdividing the property, its market value would be three times greater than if used for farming. The bankruptcy judge concluded that "Debtor's property used as agricultural land should be valued as agricultural land." *Foster*, 79 B.R. at 908. That dispute is distinguishable from the one before this Court. First, *Foster* was not an appeal to a District Court bound to a deferential standard of review. Second, there the creditors offered a "highest and best use" which would require the debtor/farmer to go into the real estate development business. This is not the case here.

While the use proposed by the debtor should be considered in determining the value of collateral, the bankruptcy judge should not have his hands tied.

> ... [T]he valuation should properly take all material possibilities into consideration and weigh their likelihood in arriving at a value. Thus, it is probably more appropriate to view the varying bases and manners of valuation as establishing a range of possible values as opposed to a finite set of alternatives.

3 Collier on Bankruptcy, ¶ 506.04[2] (15th ed. 1979) (cited in *In re Fursman Ranch*, 38 B.R. 907, 910 (Bankr.Mo.1984) and *In re Rankin*, 49 B.R. 565, 567 (Bankr.Mo.1985)). Mindful of this necessary flexibility, the bankruptcy court's valuation will be upheld provided the ultimate valuation is based on a use, i.e., cropland in this instance, that is not wholly inconsistent with the use for which the property is designed or intended. 3 Collier on Bankruptcy, ¶ 506.04[2] (15th ed. 1979). The bankruptcy court should also consider the use made by the debtors at the time the creditor loaned them money and acquired a security interest in their property. These considerations are commensurate with the policies behind the bankruptcy legislation: Neither debtors nor creditors can use the 506(a) valuation hearing as a sword against the other. This Court finds that the Bankruptcy Court's valuation reflects this policy.

It is the opinion of this Court that the valuation of $71,150 is a reasonable reflec-

tion of the fair market value of the property; i.e., "the price which a willing seller under no compulsion to sell and a willing buyer under no compulsion to buy would agree upon after the property .has been exposed to the market for a reasonable time." *In re Courtright,* 57 B.R. 495 (Bankr.Or.1986) (cited by *Foster,* 79 B.R. at 908). The Court is convinced that treating the 107 acres as cropland with a value of $200 per acre and the inclusion of $4,000 for marginally functional buildings, in light of the testimony heard by the Bankruptcy Court, was not clearly erroneous. For all of the foregoing reasons it is

ORDERED that the decision of the Bankruptcy Court establishing the fair market value of the 388 acre farm at $71,-150 is affirmed.