In re Jesse Ervin SHERMAN and
Sandra Camille Sherman,
Debtors.

**Bankruptcy No. 93–10053.**

United States Bankruptcy Court,
E.D. Texas,
Beaumont Division.

Aug. 31, 1993.

William Wirth, Asst. U.S. Atty., Houston, TX, for the Small Business Admin.

Frank Maida, Beaumont, TX, for debtors.

## OPINION

DONALD R. SHARP, Bankruptcy Judge.

Comes now before the Court the Objection of Jesse Ervin and Sandra Camille Sherman to a Proof of Claim filed by the United States of America on behalf of its agency, the Small Business Administration, pursuant to regular setting in Beaumont, Texas. This matter constitutes findings of fact and conclusions of law in accordance with Fed.R.Bankr.P. 7052 and disposes of all matters before the Court.

## FACTUAL BACKGROUND

Jesse Ervin and Sandra Camille Sherman, hereinafter referred to as ("Debtors"), filed for relief under Chapter 13 of the Code on January 14, 1993. One of the assets in Debtors' estate is a 57 acre tract of undeveloped land near China, Texas. At the present time, Debtors use this land to pasture cattle; the land constitutes no part of Debtors' homestead.

As of the petition date, this property is encumbered by a first lien in the amount of $57,197.71 which is not at issue in these proceedings. The Small Business Administration, hereinafter referred to as ("SBA"), holds a second lien on the property in the amount of $94,953.54. Debtors object to the classification of the SBA's claim as secured. The pleadings originally filed asserted that the property had a value of

$78,000.00 and that the SBA claim was secured to the extent of $20,604.95. At trial, the position of the Debtors changed and a much lower value was asserted for the property resulting in the Debtors' assertion that the SBA claim was totally unsecured. No objection to this evidence was lodged and therefore the pleadings are considered amended to conform to the evidence introduced without objection.

At the regularly scheduled hearing, the evidence of both parties consisted primarily of the testimony of the appraiser hired by that party. The appraisers had dramatically differing views of the value of the property which stemmed primarily from their differing conclusions over what constitutes the highest and best use for this property. The Debtors' appraiser saw the property as pasture land and based on comparable sales of rural pasture land in the area assigned a value to the property of $750.00 per acre for a total value of $42,832.50. The SBA's appraiser saw the property as being too small for an economical agricultural use and determined that its location and road frontage made it ideally situated for the development of five to ten acre tracts to be marketed as rural residential homesites.

The Debtors' appraiser used a very straight forward market data approach and compared this property to three other tracts considered by him to be comparable sales. Based on some adjustments between those sales and the property at issue, the above value was determined. The SBA's appraiser, because of his view that the property could be subdivided and sold, had a somewhat more complicated appraisal approach. The SBA appraiser's approach determined that the property, when sold as five to ten acre residential homesites, would have a value of $2,967.00 per acre. However, he recognized that there would be certain expenses of sale and estimated that approximately four years would be required to fully market the lots. He then hypothesized a scenario in which the property would be sold to an investor who would take into account the expenses of sale and discount the ultimate sales price at a twelve (12%) percent annual discount rate to compensate for the time it would take to sell the property. That computation resulted in a present worth of $1,920.00 per acre for the property. This per acre present value translates to an aggregate value of $109,708.31 [1] for the tract of land as seen by the SBA appraiser. Central to the SBA appraiser's valuation is the determination that virtually no development cost would be incurred since the property could readily be divided into lots fronting on an existing road where utilities are already available.

Debtors' primary dispute with the SBA expert's opinion is his conclusion that the highest and best use of the land is for rural residential development. Debtors acknowledge that development of this type is not uncommon in the area but argue that the development is not feasible because of the tendency of the land to retain water in rainy periods and the assertion that any development premised on lots fronting the existing roadways would create undesirable long thin lots. The Court rejects both of these arguments since the plat of the property included in both appraisal packages indicates clearly that quite satisfactory lot lines could be drawn utilizing the existing roadway. The Debtors' assertion that the property is subject to water retention or flooding was also not demonstrated at the hearing. The photographs introduced into evidence show the property to be relatively level open land as found by the SBA appraiser and the one set of photographs introduced into evidence that were obviously taken during a period of heavy rain show only minimal flooding in the ditches along the roadways and in one small rear corner of the property. Additionally, the flood zone maps included in the appraisal packages demonstrate clearly that this property does not lie within any recognized flood hazard zone. The Court holds that the evidence clearly establishes that the SBA appraiser's approach to the

---

**1.** This amount uses the actual not estimated per acre values arrived at by the SBA's expert. In addition, this Court has corrected the SBA's assumption that the property consists of 60 acres instead of the 57.11 acres it actually contains.

valuation of this property is the better one. The use of this property, which would yield the greatest economic return to the owner at this time, is the development of the property into rural residential homesites along the lines envisioned by the SBA appraiser.

Resolving the above factual dispute between the parties, however, does not end the Court's inquiry. It is clear that the appraisal submitted by the Debtors is a valid appraisal if one adopts the position that the property is to continue to be used as a small pasture. The economic realities are that this property is simply not worth as much if one uses it as pasture land as it would be for development. As noted by the SBA appraiser, the property is too small to be an economical agricultural unit whether one is speaking of pasture land or crop land. Therefore, its use as pasture land is only as a subsidiary income for one whose principal earnings are derived elsewhere or for use as a pasture in the nature of a hobby or recreational property. Therefore, it can be said that the Debtors' appraisal, insofar as it goes, is an accurate appraisal if one limits the use of the property to pasture land.

That observation leads to the second objection raised by the Debtors which was not vigorously pursued by either party in court but which gives this Court far more concern in resolving the controversy between these parties. Simply put, Debtors dispute the applicability of any highest and best use analysis in the face of Debtors' proposed intention to retain the property for the purpose of raising cattle. Debtors disclaim any interest in developing the property along the lines advanced by the SBA's expert.[2] Debtors maintain that any valuation of their property should be consistent with their proposed use. In supporting its valuation, the SBA argues that the value of any property is based, not on the subjective whims of the landowner, but on the competitive forces in the market. Based on those market forces, the SBA

maintains that its value, premised on the use of the property as a residential rural development, is appropriate.

## DISCUSSION OF LAW

No other area is more central to the bankruptcy process yet more perplexing to those practitioners and courts presented with its permutations than the question of valuation of assets. Despite its central theme in bankruptcy, only one section of the Bankruptcy Code purports to lend guidance on this issue:

> An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of the property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

11 U.S.C.A. § 506(a) (West 1993). Muddying the water further is the less than lucid legislative history accompanying § 506: " 'Value' does not necessarily contemplate forced sale or liquidation value of the collateral; nor does it always imply a full going concern value. Courts will have to determine value on a case-by-case basis, taking into account the facts of each case and the competing interests in the case." H.R.Rep. No. 595, 95th Cong., 1st Sess. 356 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6312. The Senate Report offers the same level of guidance: "While courts will have to determine value on a case-by-case basis, the subsection makes it

---

**2.** This disclaimer can not be taken at face value. A financial statement provided to the SBA by Debtors indicates that as late as November 7, 1991, Debtors valued the property at $325,- 000.00. Such a value is totally inconsistent with an agricultural purpose and does raise the question of Debtors' true intent towards the property.

clear that valuation is to be determined in light of the purpose of the valuation and the proposed disposition or use of the subject property." S.Rep. No. 989, 95th Cong., 2d Sess. 68 (1978), U.S.Code Cong. & Admin.News 1978, p. 5854. Thus, it is clear that Congress has vested great discretion in the courts to develop the parameters under which valuation, pursuant to § 506, is to be measured.

■ The concept of valuing property according to its highest and best use is an accepted tenet in appraisal methodology. Highest and best use is defined as "the reasonable, probable, and legal use of vacant land or an improved property which is physically possible, appropriately supported, financially feasible, and results in the highest value." *The Appraisal of Real Estate,* AIREA, Chicago, Ill. 1987, pg. 42; *In re Melgar Enterprises,* 151 B.R. 34, 36 n. 2 (Bankr.E.D.N.Y.1993). Having determined that the highest and best use would yield one value for this property and that the avowed intent of the Debtors is to use the property in another way that would yield a smaller value, this Court perceives the central issue to be the effect to be given to the last sentence in 11 U.S.C.A. § 506(a).[3] If one values this property based on the Debtors' proposed use (which is certainly consistent with their past use) then the smaller value found by their appraiser would be the appropriate value. Should any plan of reorganization allow the debtor to discharge his obligation to a secured creditor by paying that value and then being free to liquidate the property at a greater value by utilizing it for its highest and best use? Equitable considerations would seem to mitigate against allowing such a result to occur. But to ignore that language in the statute would seem to be ignoring a clear congressional mandate to consider the proposed use of the property in determining its value.

For a group of cases which discuss the valuation process and Code section 506, one could read *In re Raylin Dev. Co.,* 110 B.R. 259 (Bankr.W.D.Tex.1989); *In re Peerman,* 109 B.R. 718 (Bankr.W.D.Tex.1989) and *In re Simons,* 113 B.R. 942 (Bankr.W.D.Tex. 1990). While these cases discuss the issue of highest and best use and generally agree that property should be valued at its highest and best use, the exact issue at question in this case was not dealt with. All of the above cases dealt with situations where the debtor proposed to surrender or give back secured property in satisfaction of a portion of the debt secured by the property. The real issue in those cases dealt with determining the value in the hands of the creditor when one considered the alternatives available to the creditor for disposing of the property. The issue in the instant case is whether or not the Debtors should have to pay the creditor an amount equivalent to what the creditor would receive if the property were marketed for its highest and best use or whether the creditor can be forced to accept a lower value because the Debtors propose to use it in a less productive manner.

In the case of *In re Foster,* 79 B.R. 906 (Bankr.D.M.1987) this issue seemed to be squarely presented to the court. The issue arose in a Chapter 12 confirmation hearing and the court, in reliance on some earlier jurisprudence from its own court,[4] held that those cases stood for "... the proposition that under § 506(a), the debtor's proposed use of the property should be utilized by the appraiser, rather than speculating on uses different from those proposed in the plan. That proposition is crucial in this case because appraisals of the Bank and Beneficial adopt the 'highest and best use' as the market value in fixing valuation based on subdivided tracts or rural homesites rather than agricultural use." The court then discussed the creditor's appraisal which was based on the highest and best

---

**3.** "... such value shall be determined in light of the purpose of the valuation and of the proposed disposition *or use of such property,* and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest." (emphasis added).

**4.** *In re Robinson Ranch,* 75 B.R. 606 (1987) and *In re Cormier,* 75 B.R. 692 (1987).

use without a specific finding as to whether the appraisal was accurate or not. The court then stated, "I find and conclude the appraisal on debtor's property used as agricultural land should be valued as agricultural use."

The *Foster* opinion was later criticized in the case of *In re Ehrich*, 109 B.R. 390 (Bankr.D.S.D.1989) where the court noted that the *Robinson* and *Cormier* cases relied on in the *Foster* opinion did not actually support the conclusion reached. The *Ehrich* case, which was a Chapter 11 proceeding, dealt with a determination of whether the property should be valued at its highest and best use when that highest and best use would be different from the debtor's current use. The court discussed the interpretation of § 506 as contained in the Collier treatise and in the treatise by J. Queenan, Jr. entitled "Standard for Valuation of Security Interests in Chapter 11," 92 Comm.L.J. 18 (1987). The Queenan article emphasized that the thing being valued is not the asset itself but the interest of the secured creditor in the estate's interest in the property. Although this may be a subtle difference, it is important when one realizes that the security interest contains a valuable bundle of rights in the hands of the secured creditor. These rights, absent the automatic stay in bankruptcy, give the secured creditor the right to foreclose on the property and sell it at a commercially reasonable sale, retaining the net proceeds after the deduction of the expenses of the sale. If one values that bundle of rights, then it is clear that the highest and best use must be used since that is what the secured creditor could receive by exercising the rights validly acquired by him. The *Ehrich* case also focuses on the interplay between § 506(a) and § 1129(a)(7) which is the so called best interest of creditors' test. It is noted that there is no exactly comparable provision under Chapter 13 of the Bankruptcy Code. Section 1129(a)(7) would require each impaired class to receive property of a value as of the effective date of the plan equal to what they would receive in a Chapter 7 liquidation. The closest comparable provision in Chapter 13 is 11 U.S.C.A. § 1325(a)(5) which only requires that each

secured claimant receive property that is not less than the allowed amount of his secured claim. 11 U.S.C.A. § 1325(a)(4) requires that only unsecured creditors receive not less than they would in a Chapter 7 liquidation. In any event, the *Ehrich* case adopts Judge Queenan's view that the language "in light of ... the proposed ... use" was intended merely to make it clear that a valuation in one setting such as lift stay litigation would not be binding upon a valuation in another setting such as determining a secured claim for plan treatment.

It is clear from all the cases this Court could locate which have discussed this issue that there is no definitive appellate court holding giving the Court any guidance as to what the last sentence of 11 U.S.C.A. § 506(a) actually means. It is also equally clear that all of the discussion of this section in the various bankruptcy courts leave one with a less than clear road map to follow.

This Court believes that the congressional intent behind the enactment of § 506 was to make it clear that the bankruptcy court should consider all factors available to it in arriving at valuations of interests in property. This Court believes that the singling out of one sentence and allowing that to control the entire process of valuation is subverting that congressional intent which is stated in H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 356 (1977) which is to allow the bankruptcy court the flexibility to determine values on a case by case basis after due consideration of the facts of each case and the competing interests in that case. As noted by District Judge Porter in *Speck v. U.S. Through Farmers Home Administration*, 104 B.R. 1021, 1023 (D.S.D.1989): "[W]hile the use proposed by the debtor should be considered in determining the value of collateral, the bankruptcy judge should not have his hands tied."

This Court believes that to value the property in the instant case as pasture land and allow the Debtors to retain the property by paying only that value to the secured creditor would be so inequitable to the se-

cured creditor as to amount to a confiscation of its property for no legitimate purpose. In arriving at this conclusion, the Court is mindful of the fact that this tract of land is not an economical agricultural unit because of its small size and that to allow it to be used as such is only indulging the Debtors' whim to exercise a hobby or a part-time enterprise. It is simply not equitable to force the secured creditor to support that activity. The evidence is clear that the only reasonable disposition of this property at this point in time is disposition as rural residential homesites which is clearly the highest and best use for this property.

■ Although this opinion speaks to the peculiar set of facts in this case only, this Court is not convinced that valuing property subject to a security interest at anything other than its highest and best use is permitted under the confirmation standards of chapter 13 of the Code. *See* § 1325(a) (West 1993). Section 1325(a)(3) requires that the plan be proposed in good faith. Section 1325(a)(4) requires that at a minimum, the value of property to be distributed pursuant to the chapter 13 plan must not be less than the amount the unsecured creditor would receive should the debtor liquidate under chapter 7. In this Court's view, valuing this property at anything other than its highest and best use is violative of these two principles. The reason for this conclusion is self-evident. When property is valued at anything other than its highest and best use such valuation has two effects. First, it causes the secured creditor to become unsecured/undersecured and results in the formation of an unsecured deficiency claim, which when added to all preexisting unsecured claims has the effect of causing a reduction in the percentage distribution to the unsecured class of claims. However, when that same property is valued in accordance with its highest and best use the unsecured portion of the secured creditor's deficiency claim is correspondingly reduced or even eliminated. The end result is that the unsecured class will receive a greater percentage distribution of payments pursuant to the debtor's plan. Any liquidation analysis must assume a commercially reasonable sale. The price obtained for the property will be driven by market forces and will reflect its highest and best use, not the use intended by the debtor. Therefore, since debtor's unsecured creditors would receive more under a chapter 7 liquidation analysis because as a class they would not be bound by the debtor's previous use of the property any proposal by a debtor to value property at anything other than its highest and best use in the context of a chapter 13 plan is, as a general rule, in violation of § 1325(a)(4) of the Code.

Similarly, this Court is of the belief that in return for the tremendous opportunities granted by chapter 13 of the Code a debtor is bound by an affirmative duty to maximize the values and returns for assets which constitute property of the estate. In this regard, valuing this asset at anything other than its highest and best use violates this duty to the creditors. Such a valuation does not balance the interests of all parties but serves only the interests of the debtor. As such, this Court is of the opinion that such a proposal is violative of § 1325(a)(3).

In accordance with the preceding observations, this Court finds and accepts the argument of the SBA that the 57.11 acres of subject land should be valued according to its highest and best use as rural residential homesites. The Court finds that the value of this subject property is $109,-708.31, giving the SBA a secured claim in the amount of $52,708.31 and an unsecured claim in the amount of $42,245.23. Accordingly, Debtors' objection to the proof of claim filed by the United States of America, on behalf of its agency the SBA, is overruled in part and sustained in part.