**In re Joseph A. and Phyliss G. DONATO, Debtors.**

**United States of America, Appellant,**

v.

**Joseph A. and Phyliss G. Donato, Appellees.**

**No. 3:00–CV–1169.**

United States District Court, M.D. Pennsylvania.

Sept. 26, 2000.

David J. Harris, Wilkes Barre, PA, for debtors.

Christopher R. Zaetta, U.S. Dept. of Justice, Washington, DC, for appellant.

### MEMORANDUM

MUNLEY, District Judge.

Before the court for disposition is an appeal from the Bankruptcy Court which calls upon us to determine the correct valuation method for a piece of real estate located in Clarks Summit, Pennsylvania. The appellant is the United States of America, and the appellees/debtors of the bankruptcy are Joseph A. and Phyliss G. Donato. The matter is ripe for disposition having been fully briefed and argued.[1]

1. A motion to dismiss the appeal of the United States [5–1] has been filed by the debtors. Their argument is that the United States is appealing Judge Thomas' opinion of July 27, 1999 and such an appeal had to be filed within ten days. The instant appeal was filed more than ten days later on May 30, 2000.

According to the United States, Judge Thomas did not issue a final order until May 17, 2000 and its appeal was timely filed on

### Jurisdiction

We have jurisdiction over the instant bankruptcy appeal pursuant to 28 U.S.C. § 158(a)(1), which provides that the district courts of the United States have jurisdiction to hear appeals from final judgments, orders, and decrees of the bankruptcy courts.

### Standard of Review

■ This court reviews the bankruptcy court's conclusions of law *de novo. In re O'Brien Environmental Energy, Inc.*, 188 F.3d 116, 122 (3d Cir.1999). The bankruptcy court's findings of fact will only be set aside if clearly erroneous. Bank. Rule 8013 ("On appeal the district court...may affirm, modify, or reverse a bankruptcy judge's judgment order, or decree or remand with instructions for further proceedings. Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses."); *In re O'Brien*, 188 F.3d at 122.

### Background

On September 22, 1995, the debtors filed a petition under Chapter 13 of the Bankruptcy Code. A timely proof of claim was filed by the Internal Revenue Service reflecting a secured claim in the amount of $111,771.85. Record Document (hereinafter "R.Doc.") 14, Internal Revenue Service's Proof of Claim dated March 1, 1996. The secured claim consists of the debtors' unpaid income taxes. *Id.*

Approximately fourteen acres of real estate located in Clarks Summit, Pennsylvania is owned by the debtors. On Decem-

May 30, 2000. The debtors concede that if the date of the final order is determined to be May 17, 2000, then the appeal was timely filed. *See* Appellees' Modification of Motion To Dismiss, pg. 2. After a careful review of the matter, we find that the United States is appealing the order filed May 17, 2000, and thus, the appeal was timely filed on May 30, 2000. Consequently, the debtors' motion to dismiss will be denied.

ber 3, 1996, the debtors filed a complaint to determine secured status under 11 U.S.C. §§ 506(a) and (d). The bankruptcy court held a trial on July 27, 1999 regarding the debtors' complaint. The main issue of the trial was the value of the debtors' real estate. Both the United States and the debtors presented expert testimony regarding the value of the subject property. The debtors' experts valued the property at $186,000.00 [2], and the expert witness presented by the United States placed the value at $926,000.00 [3]. The great disparity in the two valuations is due to the United States valuing the property as if it were to be subdivided and the debtors valuing the property as one parcel. At the conclusion of the trial, Bankruptcy Judge Thomas found that the value of the land was $186,000.00. The matter now before the court is United States' appeal this decision.

## Discussion

Under Chapter 13 of the Bankruptcy Code, debtors are provided a mechanism by which to voluntarily create a payment plan to satisfy their debts. *See* 11 U.S.C. §§ 1301–1330. Debtors can repay both secured and unsecured creditors. If the creditor has a lien on the debtor's property, the claim is secured. 11 U.S.C. § 101. The claim is secured, however, only to the extent of the value of the collateral. 11 U.S.C. § 506(a). In the instant case, the value of collateral, that is the fourteen acres of real estate owned by the debtors, is at issue. The following four parties have liens against the property: 1) the Lackawanna County Tax Claim Bureau has the first position lien for $24,334.35; 2) Abbey Road Ltd. has the second position lien in the amount of $113,019.85; 3) Pioneer American Bank has the third position lien in the amount of $60,030.15; and 4) the United States has the fourth position

lien in the amount of $111,771.85. *See* R. Doc. 12, Stipulation dated November 1, 1999.

As stated above, the claim of a creditor is only secured to the extent of the value of the collateral. Therefore, if the property is valued at the amount the debtors seek, $186,000.00, the United States is not secured at all because the amount of the first three liens, which have greater priority than the United States' lien, is greater than the value of the property. If the value of the property urged by the United States is accepted, $926,000.00, then it is secured for the full amount of the lien.

This matter contains the following three major issues which shall be addressed *seriatim:* how is the property to be valued; what is the debtors' intended use of the property; and does the debtors' Chapter 13 Plan run afoul of section 1322(a)(3) of the Bankruptcy Code.

## A. HOW IS THE PROPERTY TO BE VALUED?

Appellant initially argues that, in general, real property should be valued at its highest and best use. In the instant case, the highest and best use is as a subdivision. In support of its position the appellant cites the following bankruptcy court decisions: *In re Sherman*, 157 B.R. 987, 992 (Bankr.E.D.Tex.1993); *In re Melgar Enterprises, Inc.*, 151 B.R. 34, 39 (Bankr.E.D.N.Y.1993); and *In re Ehrich*, 109 B.R. 390, 392 (Bankr.D.S.D.1989). These cases do, in fact, hold that when real estate is being valued, it should be valued at its highest and best use regardless of the debtors' proposed use.

Two of the cases have facts very similar to the instant case. For example, *In re Sherman* held that pasture land owned by Chapter 13 debtors would be valued based

**2.** See R. Doc. 6, Transcript of hearing, July 27, 1999, at 55.

**3.** The United States' expert valued the land at $1,176,000.00 without consideration to the cost of subdividing the property. According

to her estimation, subdivision would cost $200,000.00, bringing the value of the land to $926,000.00 R.Doc. 6, Transcript of Hearing, July 27, 1999, at 87, 92, 95.

on its highest and best use for rural residential home sites. *In re Sherman*, 157 B.R. at 991–92. Additionally, the United States Bankruptcy Court for the District of South Dakota concluded that real estate securing a claim should be valued not as ranch land but as subdividable land where the creditor can prove that the land is viable for that purpose. *In re Ehrich*, 109 B.R. 390, 392. Nonetheless, we do not find these cases persuasive as to the issue in the instant case.

In reaching their conclusions these cases address section 506(a) of the Bankruptcy Code which provides as follows:

> An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, *is a secured claim to the extent of the value of such creditor's interest in the estate's interest* in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim. *Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property,* and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

11 U.S.C. § 506(a)(emphasis added).

To courts analyzing this statutory section, there is a tension between the two italicized portions. The first sentence indicates that the creditor's interest in the property should be measured, and the last sentence indicates that the court should examine the debtors' proposed use of the property. The tension arises in when the debtor intends to use the property for something besides its highest and best use, thus affecting the creditor's interest. In the above cited cases, the courts found it to be equitable to examine the "creditor's interest" and determined that the highest and best use is the best valuation method.

In other words, the courts found it to be inequitable for debtors to intend to use their property for anything besides the highest and best use because it adversely affects the creditor's interest.

Other cases, however, have rejected the highest and best use method of valuation, and several of these contrary cases are from courts located within the Third Circuit. For example, in *Brace v. United States*, 163 B.R. 274 (Bankr.W.D.Pa.1994), the issue was whether the debtors' real estate should be valued based on its current and prospective use as a working farm or at its highest and best use as a hobby farm. The court found that the valuation should be based on the use for which the property was designed and intended, that is a working farm. *Id.* at 277.

In *United States v. 147.47 Acres of Land*, 352 F.Supp. 1055 (M.D.Pa.1972) Judge William Nealon of the Middle District of Pennsylvania was presented with the issue of valuing land in the context of eminent domain proceedings. Judge Nealon found that if the highest and best use of land is as a residential subdivision it should be valued as such where steps have been taken in the direction of developing the land in that manner. *Id.* at 1060.

Two lines of cases have developed, therefore in valuing property under section 506(a), those giving more weight to the creditor's interest, by setting the highest and best use value and those giving more effect to the last sentence of 506(a) and assigning paramount importance to the debtor's proposed use of the property. Interestingly, *Sherman, supra* which chose the highest and best use analysis stated: "It is clear from all the cases this Court could locate which have discussed this issue that there is no definitive appellate court holding giving the Court any guidance as to what the last sentence of 11 U.S.C.A. § 506(a) [dealing with the debtor's proposed use] actually means." *Sherman*, 157 B.R. 987, 991. Since the *Sherman* decision was decided, the Supreme

Court has provided its analysis of section 506(a) in the case of *Associates Commercial Corp. v. Rash*, 520 U.S. 953, 117 S.Ct. 1879, 138 L.Ed.2d 148 (1997)(hereinafter "*Rash*").

In *Rash*, the Supreme Court addressed the proper application of section 506 of the Bankruptcy Code when a bankrupt debtor exercises the "cram down" option for which Code section 1325(a)(5)(B) provides. As quoted above, the last sentence of section 506(a) provides that the value of collateral shall be determined according to the proposed disposition or use of such property. 11 U.S.C. § 506(a). The Court stated that "[a]s we comprehend § 506(a), the 'proposed disposition or use' of the collateral is of paramount importance to the valuation question." *Associates Commercial Corp. v. Rash*, 520 U.S. 953, 962, 117 S.Ct. 1879, 138 L.Ed.2d 148 (1997). The Court held that when a debtor seeks to retain and use the creditor's collateral in a Chapter 13 bankruptcy, the collateral is to be valued at its replacement value, that is the amount the debtor would have to pay for comparable property.

More particularly the Court defined "replacement value" as "...the price a willing buyer in the debtor's trade, business, or situation would pay a willing seller to obtain property of like age and condition." *Rash*, 520 U.S. at 959, n. 2, 117 S.Ct. 1879. The Court further noted that the replacement value is the cost the debtor would incur to obtain a like asset for the *same proposed use*. *Id.* at 965, 117 S.Ct. 1879. Once again the Court is emphasizing the importance of the proposed use of the collateral.

Hence, the proposed use of the collateral is of paramount importance according to the Supreme Court and section 506(a). In light of the *Rash* opinion, we find that to automatically apply the "highest and best" use value to the real estate, without examining its proposed or intended use, is not proper, and reject the cases cited by the appellant which so hold.

Appellant avers that using the *Rash* Court's replacement value with respect to real estate is not proper because of its nature as real property. First, we note that the Supreme Court, although dealing with a truck in *Rash*, does not limit its decision only to trucks. The definition used by the Supreme Court does not on its face preclude using it with real estate. The reasoning of the court—that one should examine the underlying proposed use of the collateral—is equally applicable to real estate as to trucks.

Appellant also claims that no reported decision has utilized replacement value with respect to real estate. Appellant's brief at 15. Our research, however, has uncovered several cases doing just that. For example in *In re Watkins*, 240 B.R. 735 (Bankr.C.D.Ill.1999), the court, relying on *Rash* uses replacement value with respect to a family farm. The court found that valuing the land as subdivided would be improper because that was not the intended use. *Id.* at 741. Also, the holding of *In re Allen Courtright*, 57 B.R. 495 (Bankr.D.Or.1986) is that where debtors intend to retain and use property (here a farm with improvements), the amount in which a secured claim should be allowed under section 506(a) is what it would cost the debtors to replace the property. *Id.* at 497.

■ Accordingly, pursuant to *Rash* and the cases cited above, we must determine what the cost would be for the debtors to obtain like property for the same proposed use. Central to this valuation is a determination of what the proposed use of the property is. Appellant claims that the debtors intend to subdivide the property to pay their creditors and this is evidenced by their Chapter 13 Plan and the trial testimony. Appellees claim that they never intended to subdivide the total parcel.

### B. What is the proposed use of the property?

■ Debtors contend that their Chapter 13 Plan (hereinafter "plan") only pro-

vides for the subdivision of their property to the extent necessary to satisfy their debts to Community National Bank (now by succession Abbey Ridge, LTD) and Salvatore Favo.[4] The manner in which the debtors intend to utilize their property is an issue of fact. If the bankruptcy judge made a finding of fact with regard to this issue, then we must apply the more deferential "clearly erroneous" standard of review as opposed to applying the *de novo* standard. Bank. Rule 8013; *In re O'Brien,* 188 F.3d 116, 122 (3d Cir.1999).

The bankruptcy judge found as follows: "Here I think it's rather clear the Debtor has bought this property initially probably as some sort of an investment or vacation home, as a horse farm originally. And then because of his financial circumstances was required to start liquidating parcels, and in that sense continued that plan, it is his actual Chapter 13 plan—liquidate enough." R.Doc. 6, Transcript of Hearing, July 27, 1999, at 119. Judge Thomas proceeded to explain: "[Both appraisers] agree that the best use of this property, the highest and best use was a residential development. I'm satisfied that the *Rash* footnote truly measures what I have to do today. That I have to make a decision as to what price a willing buyer in the Debtor's trade or business or situation would pay a willing seller to obtain this property. Not 28 plots, but the entire parcel, the 14 acre parcel." *Id.*

Accordingly, the Bankruptcy Judge concluded that the intended use of the property was not as a subdivision but kept together as a single parcel, and he valued it accordingly. After reviewing the record, we cannot find that Judge Thomas's finding is clearly erroneous.

A reading of the plan reveals that the property was only to be subdivided so as to fund the plan, and the United States is not mentioned in the plan. The only se-

cured claims mentioned in the debtors' plan are as follows:

*SECURED CLAIMS*

The Debtors owe an undetermined prepetition arrearage sum to Community National Bank. This sum will be paid into this Plan. The Debtor, Joseph Donato, may owe certain sums to Salvatore Favo for services rendered on horses owned by the Debtor which remain in the possession of Salvatore Favo. Such claim, if allowed will be paid into this Plan.

R.Doc. 9, Chapter 13 Plan, at 2.

As to unsecured claims the plan provides as follows:

*UNSECURED CLAIMS*

The Debtors owe in excess of $400,000.00 in general unsecured claims, no portion of which shall be paid in this Plan.

*Id.*

With respect to subdivision the plan provides as follows:

The Debtors own approximately 15 acres of real estate in Clarks Summit, Lackawanna County, Pennsylvania. The Debtors propose to subdivide such property and sell lots to fund the Plan. One such lot has already been subdivided and is under contract for sale, subject to court approval, for the sum of $75,000.00.

*Id.*

The debtors' property was to be subdivided to pay the secured claims provided for in the plan, and the only entities mentioned as possessing secured claims are Community National Bank and possibly Salvatore Favo. The United States is not named in the plan at all. Therefore, we cannot find from the plan itself that the debtors intended to subdivide the property in order to satisfy their obligation to the United States.

---

**4.** The appellees assert, and the United States does not contest, that Favo's claim is not involved with the subject real estate and, re-

gardless, was determined to be unsecured. See Brief in Reply for Appellees, at 5 n. 1.

Moreover, an intention not to subdivide the property is found in the debtors' testimony at the trial. Joseph Donato testified that he had no money to put into subdividing the property. R.Doc. 6, Transcript of hearing, July 27, 1999, at 74. He also testified that he purchased the property to raise horses and build a house. *Id.* 75. He considered subdividing the property in 1995–96 to get out of his financial obligations. *Id.* 76. He admitted that he intended to subdivide to fund the Chapter '13 plan, however, he also pointed out that the Internal Revenue Service was not listed in the plan at all, particularly in the section regarding secured creditors. *Id.* at 81–82. Moreover, he admitted that he did not have the financing to subdivide the property. *Id.* 82.

From the above-cited evidence, we find that it was not clearly erroneous for the court to find as it did.

## C.   Section 1322(a)(3)

Lastly, the appellant argues that the debtors' plan is improper because it runs afoul of section 1322(a)(3) of the Bankruptcy Code. We find the appellant's argument to be unconvincing. Section 1322(a)(3) of the Bankruptcy Code provides that if a plan classifies claims, it must provide the same treatment for each claim within a particular class. In the instant case, the plan classifies only two claims as secured. These two claims are treated alike in the plan. Accordingly, the United States' argument is without merit.

**Conclusion**

We find that the proper way to value the real estate at issue is to examine the debtors' intended use of the property. As the debtors are not intending to subdivide the property, it cannot be valued as subdividable and is properly valued as one parcel. Accordingly, the bankruptcy court did not err when it found the value of the property to be $186,000.00. The bankruptcy appeal

will accordingly be denied. An appropriate order follows.