## In the Matter of Samuel Lee BELL Joyce Marie Bell Debtors.

### No. 01–13796.

United States Bankruptcy Court, N.D. Indiana, Fort Wayne Division.

April 21, 2003.

---

Grant Shipley, Fort Wayne, IN, for Debtors.

Andrew Kraemer, Merrillville, IN, for claimant.

## DECISION

ROBERT E. GRANT, Bankruptcy Judge.

This matter is before the court following trial of the issues raised by Sterling Bank and Trust's objection to confirmation of the debtors' proposed chapter 12 plan. The objection raised several issues. These include whether the debtors used the correct standard to value the property securing the Bank's claim, whether debtors' business constitutes a "farming operation" within the scope of 11 U.S.C. § 101(21), and whether a sufficient percentage of their debt is farm related so that they

qualify as "family farmers" under § 101(18)(A).

The Bank has a mortgage on the debtors' farm, which consists of approximately 40 acres divided between a homesite containing debtors' residence and other improvements, 22 acres of tillable ground and 17 acres of marshland. In their proposed plan, the debtors have given this property a value of $154,000, which is supported by the testimony of an appraiser. The Bank contends the property has a higher value—$205,000, also supported by the testimony of an appraiser—and that debtors have used an incorrect method of valuation.

 Debtors have the burden of proving that all the requirements for confirmation have been met. *In re Ames,* 973 F.2d 849, 851 (10th Cir.1992). One of these requirements is that the distribution to a secured creditor who has not accepted the plan will not be less than its allowed secured claim. 11 U.S.C. § 1225(a)(5)(B)(ii). The first step in making this determination is to place a value on the creditor's collateral, *see* 11 U.S.C. § 506(a), and the proper method for doing so was settled by the Supreme Court in *Associates Commercial Corp. v. Rash,* 520 U.S. 953, 117 S.Ct. 1879, 138 L.Ed.2d 148 (1997).[1] When a creditor's collateral is being retained by the debtor under a proposed plan, *Rash* requires the use of a replacement value standard. *Id.* 520 U.S. at 955–56, 117 S.Ct. at 1882. This is akin to fair market value, being "the price a willing buyer in the debtor's trade, business, or situation would pay to obtain like property from a willing seller." *Id.* 520 U.S. at 960, 117 S.Ct. at 1884.

 The debtors have valued their property as a farm. Given the Supreme Court's observation that the " 'proposed disposition or use' of the collateral is of paramount importance to the valuation question," *Rash,* 520 U.S. at 961, 117 S.Ct. at 1885, and it's repeated emphasis on what "a buyer in the debtor's trade, business or situation would pay to obtain like property," *Rash,* 520 U.S. at 960, 117 S.Ct. at 1884, "for the same 'proposed ... use,'" *Rash,* 520 U.S. at 964, 117 S.Ct. at 1886, debtors contend this is the correct approach. They argue that since they are farmers who want to keep the property and continue using it in a farming operation, the court should consider only its value as a farm, without regard to how its value might be influenced by other potential uses. Furthermore, because the 17 acres of marshland are not used (or useable) in their farming operation, debtors have valued it at zero for purposes of determining the Bank's allowed secured claim.

Debtors' argument finds support in two decisions that have been issued since *Rash, In re Donato,* 253 B.R. 151 (M.D.Pa. 2000) and *In re Watkins,* 240 B.R. 735, 741 (Bankr.C.D.Ill.1999), as well as several that pre-date it: *In re Brace,* 163 B.R. 274, 277 (Bankr.W.D.Pa.1994) (value "must be based upon the Debtors' current and prospective use of the property" not some other); *In re Anderson,* 88 B.R. 877, 885 (Bankr.N.D.Ind.1988)(Lindquist, B.J.) ("value should be based on its actual value as income-producing farmland for confirmation purposes regardless of what its highest and best use might be for other than agricultural purposes outside the context of reorganization"); *In re Snider Farms, Inc.,* 79 B.R. 801, 810 (Bankr.N.D.Ind.1987)(Lindquist, B.J.)(evidence concerning value considered in light of the fact "that the debtor's purpose in

---

**1.** Although *Rash* dealt with a chapter 13 plan, the provisions of all three reorganization chapters—11, 12 and 13—concerning the treatment of secured claims are the same.

having a plan confirmed is to reorganize the farm as an on-going farm ... and not for the myriad of other reasons which may drive the market value up to a point where it is obvious that a fair return on the land from farm operations is not feasible."). These cases all appear to hold that it is a debtor's particular use of property following confirmation that should determine its value, rather than market forces which may be influenced by other considerations. Thus, the debtors argue that farmland, which they plan to continue using as farmland following confirmation, should be valued as nothing but farmland, and marshland, which they cannot use and do not contemplate using for any particular purpose, should be valued at nothing, even though the market may place a higher value on those assets. As the *Donato* court noted when it accepted much the same argument, although § 506(a) directs the court to value the "creditor's interest in the estate's interest in ... property," because the court is to make that determination "in light of the ... proposed ... use of such property," a "tension arises in [sic] when the debtor intends to use the property for something besides its highest and best use, thus affecting the creditor's interest." *Donato*, 253 B.R. at 154 (emphasis omitted).

The court cannot agree with the debtors' interpretation of *Rash*, and the decisions upon which they rely are not consistent with the Supreme Court's conclusion that the value of property being retained under a confirmed plan is to be based on what the debtor would have to *pay* for comparable property. *Rash*, 520 U.S. at 955–56, 117 S.Ct. at 1882. Admittedly, the Court emphasized that " 'the proposed disposition or use' of the collateral is of paramount importance to the valuation question." *Rash*, 520 U.S. at 962, 117 S.Ct. at 1885. Yet, in doing so the Court was referring to the debtor's "two options" for

dealing with secured claims—surrender the collateral to the creditor or retain it and pay the creditor the collateral's present value. *Id.* Consequently, the Court's comments about the proposed disposition or use of property must be understood in light of these two alternatives—surrender or retain. *Rash* says nothing about setting a value that is based upon a use which might be unique to a particular debtor. Indeed, the Court specifically rejected what it called "a ruleless approach" to value that would be "based on the facts and circumstances of individual cases." *Rash*, 520 U.S. at 965 n. 5, 117 S.Ct. at 1886 n. 5. Debtor's argument would lead to just such a case by case approach.

Under *Rash*, when a debtor proposes to retain a secured creditor's collateral, the court is to determine the replacement value of that property. *Id.* This value is based upon "what the debtor would have to pay for comparable property." *Rash*, 520 U.S. at 955, 117 S.Ct. at 1882. *Cf. Bank of America Nat'l Trust & Sav. Ass'n v. 203 N. LaSalle St. Partnership*, 526 U.S. 434, 457, 119 S.Ct. 1411, 1423, 143 L.Ed.2d 607 (1999)("the best way to determine value is exposure to the market."). Debtors' approach, which focuses only upon their own contemplated use for the property, overlooks the fact that when a farmer goes out into the market to acquire land, he competes with other buyers who are also interested in acquiring the property, potentially for a variety of different purposes. Thus—at least in theory—a seller will have a number of prospective purchasers to choose from and all of them will offer to pay for the property based upon their contemplated use for it. A buyer who is willing to devote the property to a higher and better use will be willing to offer a higher price than one who is not interested in using the property to its best advantage. This forces other potential

buyers to meet or exceed that price. The purchase price ultimately paid by the successful buyer will be a product of this competition. Debtors' approach, which is based upon the proposition that the property can only be thought of as a farm because that is how the debtors intend to use it, is unrealistic and fails to reflect the property's true replacement value—what it would cost them to acquire it. It cannot be accepted by the court.

The replacement value of the property securing the Bank's claim is more than that proposed by the debtors. The lowest possible value would be that testified to by the debtor's appraiser—$154,-000—plus some unknown, additional amount attributed to the 17 acres of marshland which, for farm purposes, he valued at nothing. Unfortunately, given the evidence presented at trial, the court cannot determine what the actual replacement value of the property might be. The Bank's appraisal, although using the correct method of valuation, suffers from serious flaws. For example, the debtors' property encompasses approximately 40 acres, yet the Bank's appraisal is based on comparing it to properties which are less than half that size. Additionally, that appraisal does not indicate whether those "comparable properties" had ground that was truly comparable to the debtors' property. The property at issue consists of approximately 22 acres of tillable ground and 17 acres of marsh. The court does not know whether the Bank's appraisal is based on properties that were similarly divided. If those properties were exclusively comprised of tillable ground, to apply their per acre value to the debtor's entire acreage would significantly overvalue it.[2] If, on the other hand, the com-

parable properties were comprised of nothing but marsh, the appraisal would probably be very conservative. Since, the data and analysis used in the Bank's appraisal fails to indicate the actual replacement value of the debtors' property, it cannot be accepted by the court. As a result, the court does not know what the replacement value of debtors' farm might be, beyond the fact that it is more than $154,000. That, however, is enough.

Debtors' proposed plan does not pay the Bank the value, as of the effective date of confirmation, of its allowed secured claim and, therefore, cannot be confirmed. This conclusion fully disposes of the issue before the court—confirmation. Consideration of the other issues raised by the objection is therefore unnecessary. Confirmation will be denied. An order doing so will be entered.

---

2. Although there may be no evidence on this point, the court does not believe that tillable ground and swampland are equally valuable.